UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY SHANK,

      Plaintiff,

v.                                                                    Case No. 1:25-cv-34
                                                                      Hon. Jane M. Beckering

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claims for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff filed applications for DIB and SSI on August 31, 2021, alleging a disability onset date of September 18, 2020.  PageID.32.  Plaintiff identified his disabling conditions as back injury and neck injury.  PageID.264. Plaintiff earned a GED and had past relevant work as a parts inspector and plastic injection machine tender.  PageID.42.  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 26, 2023.  PageID.32-45.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I.**      **LEGAL STANDARD**

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations."  *Taskila v. Commissioner of Social*

1

*Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

2

of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed

a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis*

*v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied

in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of September 18, 2020, and that he met the insured status requirements of the Social Security Act through December 31, 2025.  PageID.34. At the second step, the ALJ found that plaintiff has severe impairments of: cervical and lumbar degenerative disc disease ("DDD"); emphysema; and alcohol abuse.  PageID.35.  At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.36.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can stand and/or walk up to four hours out of an eight-hour workday. He can occasionally climb ramps and stairs, but he can never climb ladders or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He is limited to no concentrated exposure to extreme cold and heat or to respiratory irritants. He is limited to no work at unprotected heights.

PageID.37. The ALJ also found that plaintiff is unable to perform any past relevant work.  PageID.42.

At the fifth step, the ALJ found that plaintiff could perform a significant number of light, unskilled jobs in the national economy.  PageID.44.  Specifically, the ALJ found that plaintiff could perform the requirements of: office helper (32,000 jobs); mail sorter (18,000 jobs); and, information clerk (20,000 jobs).  PageID.44.  Accordingly, the ALJ determined that plaintiff has

not been under a disability, as defined in the Social Security Act, from September 18, 2020 (the alleged onset date) through October 26, 2023 (the date of the decision).  PageID.67.

### III.    DISCUSSION

Plaintiff set out two errors:

**A.    Substantial evidence does not support the ALJ's decision because he failed to properly evaluate the medical opinion evidence in light of Mr. Shank's MRI studies of May 2023.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. §§ 404.1520c(b) and 416.920c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency".  20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1). The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior

administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2).

The regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

Plaintiff contends that the ALJ failed to properly evaluate the opinions of PA Larsen (July 2023) and PA Brinkmeier (August 2023). Plaintiff points out that unlike the consulting examiners and state agency medical consultants, Larsen and Brinkmeier had the benefit of reviewing plaintiff's claim in light of the May 11, 2023 MRI (*see* Exh. 11F, PageID.863-869). The ALJ addressed the MRI evidence as follows,

> [W]hen the claimant presented to his orthopedist with complaints of thoracolumbar pain [on April 17, 2023 (PageID.805)], he had negative straight leg raising and 5/5 strength and was observed ambulating without an assistive device (Exs. 9F, 56-60; 12F, 17-21). An MRI of the lumbar spine was ordered, which showed prominent spondylosis at L2-3 resulting in mild to moderate central canal stenosis and severe bilateral neural foraminal narrowing (Exs. 9F, 27-28; 11F; 12F, 1-2).
>
> Given the claimant's continued complaints of pain and the results of his lumbar MRI, his orthopedist recommended injections (Exs. 9F, 51-54; 12F, 13-16), which the claimant underwent in early June 2023 (Ex. 12F, 3-6, 9-12). However,

6

when the claimant followed up with his orthopedist later that month, the claimant continued to complain of pain and difficulty standing and walking more than ten to fifteen minutes, so he was refereed for a surgical opinion (*Id.*, 7-8). The record is absent any further evidence of treatment or complaints since June 2023.

PageID.40.

The ALJ found that PA Larsen's opinion was not persuasive:

In July 2023, Mr. Larsen opined that the claimant could perform less than sedentary exertional work and would be absent from work more than three times per month (Ex. 13F). I do not find Mr. Larsen's opinion persuasive as it is not well supported and is inconsistent with his treatment notes and the other evidence of record. Specifically, when asked for the medical findings that support his opinion, Mr. Larsen simply wrote "see records", but as detailed above, Mr. Larsen has seen the claimant infrequently since the alleged onset date, and his notes consistently show him restricting the claimant to lifting twenty pounds (*see e.g.*, Ex. 4F, 2, 5). Furthermore, as detailed above, the record shows that the claimant's treatment with Mr. Larsen has been conservative and infrequent, with multiple of the claimant's limited visits being to obtain work documentation, for alcohol counseling, or for complaints unrelated to DDD. In short, there is nothing in Mr. Larsen's treatment notes that would support such an extreme opinion, and his opinion contains very little explanation for the assessed limitations. As such, I find it less than persuasive.

PageID.42. In this regard, PA Larsen's form did not list the "Patient's diagnosis".  PageID.895.

Similarly, the ALJ found that PA Brinkmeier's opinion was not persuasive:

The claimant's orthopedist, William Brinkmeier, PA-C, also opined in August 2023 that the claimant could perform less than sedentary exertional work and would be absent from work more than three times per month (Ex. 14F). I likewise do not find Mr. Brinkmeier's opinion persuasive as it is not well supported and is inconsistent with his treatment notes and the other evidence of record. Specifically, as detailed above, the record shows that the claimant's treatment with Mr. Brinkmeier has been conservative and infrequent, with Mr. Brinkmeier noting that the claimant did not require the use of an assistive device in multiple visits. Additionally, although Mr. Brinkmeier referred the claimant for a surgical evaluation following failure of lumbar injections, the claimant's examinations with Mr. Brinkmeier show he had negative straight leg raising and 5/5 strength (*see* Exs. 9F, 56-60; 12F, 17-21), and the record does not contain any evidence that the claimant was actually recommended to undergo surgery.  In short, there is nothing in Mr. Brinkmeier's treatment notes that would support such an extreme opinion, and his opinion contains very little explanation for the assessed limitations. As such, I find it less than persuasive.

*Id.*

Both of the opinions consisted of one page and neither opinion included a narrative to explain the extreme limitations. *See* PA Larsen's Opinion (Exh. 13F) (PageID.895); PA Brinkmeier's Opinion (Exh. 14F) (PageID.897).

> ALJs are not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]" *Ellars v. Commissioner of Social Security*, 647 Fed. Appx 563, 566 (6th Cir. 2016) (internal quotation marks omitted). In such cases, where the physician includes remarks on a check-off form such as noting that the "plaintiff's impairments consisted of severe peripheral vascular disease, coronary artery disease, COPD, depression and anxiety," these types of cryptic remarks are not sufficient to explain the doctor's findings. *Id*. at 566-67.

*Laporte v. Commissioner of Social Security*, No. 1:15-cv-456, 2016 WL 5349072 at *7 (W.D. Mich. Sept. 26, 2016).[1]

Consistent with 20 C.F.R. § 404.1520c and § 416.920c,[2] the ALJ considered the MRI in evaluating opinion issued before May 2023. *See, e.g.*, PageID.41 (noting that "evidence received at the hearing level [which would include the May 2023 MRI] showing the claimant's

---

[1] While these opinions did not require PA Larsen and PA Brinkmeier to check a box containing the relevant answer, the forms required them to circle the relevant answer *(e.g.*, "Is this patient's ability to sit limited?") and to provide a few words to identify various subjects  *(e.g.*, "patient's diagnosis").

[2]  In this regard, 20 C.F.R. § 404.1520c and § 416.920c provide in pertinent part:

> (c) *Factors*. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case: . . .

> (5) *Other factors*. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.

20 C.F.R. § 404.1520c(c)(5) and § 416.920c(c)(5).

continued complaints of pain and undergoing lumbar injections supports finding that the claimant

is further limited to being able to stand and/or walk up to four hours out of an eight-hour workday

instead of six hours as well as additional restrictions in postural functioning"). For these reasons,

plaintiff's claim of error should be denied.

> **B.      Substantial evidence does not support the ALJ's decision because he failed to comply with 20 C.F.R. §§ 404.1520c and 416.920c when assessing the opinion consulting examiner NP Easley.**

Plaintiff contends that the ALJ failed to comply with the requirements of 20 C.F.R.

§§ 404.1520c and 416.920c when evaluating NP Easley's opinion (March 10, 2023) (Exh. 8F,

PageID.738-749). The ALJ addressed the opinion as follows:

> The second internal medicine consultative examiner, Kelly Easley, FNP-C, opined that the claimant, among other things, can sit, stand, and walk a combined total of six hours in an eight-hour workday, requires a cane "for all distances and all terrain", and can frequently reach and handle (Ex. 8F, 10-11). I do not find Ms. Easley's opinion persuasive as it is not well supported and is inconsistent with the other evidence of record. Specifically, Ms. Easley based her opinion on the claimant's reports of functioning and the results of her detailed examination of the claimant. However, as Dr. Metoyer [the reconsideration state agency medical consultant] noted, the claimant's examination was internally inconsistent as Ms. Easley observed the claimant to walk on heels and toes and hop, but he ambulated with a cane (Ex. 8F; *see also* Exs. 7A, 7; 9A, 7). Furthermore, Ms. Easley's examination and opinion are inconsistent with treatment records the following month and in May 2023, wherein the claimant was "observed using no aids for walking assistance" by his orthopedist (Ex. 9F, 51, 56). As detailed above, the medical evidence before and after this visit do not provide substantial support to the claimant's condition deteriorating to such a drastic level indicated by Ms. Easley's examination. Given the inconsistencies of the claimant's examination both internally and with the other evidence of record, I do not find Ms. Easley's opinion, which was based on such examination, persuasive.

PageID.41-42.

Plaintiff contends that the ALJ failed to address the supportability of NP Easley's

opinion. The Court disagrees. The ALJ found that NP Easley's opinion was not well supported,

*e.g.*, NP Easley found that plaintiff required a cane for all distances and all terrain, yet also found

that plaintiff was able to walk on his heels and hop.   The ALJ also noted that the reconsideration State agency medical consultant, Alyce Metoyer, D.O., found NP Easley's opinion both internally and externally inconsistent.   PageID.41.   *See, e.g.,* Exh. 9A at PageID.108-109 (Dr. Metoyer stating in part, "clmt's 3/10/23 IMCE cited use of an AD [assistive device] is not programmatically [sic] relevant because there is no documented longitudinal evidence from a medical source that supports the clmt's medical need for an AD spanning a continuous [sic] period of at least 12 months").   Accordingly, this claim of error should be denied.

## IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: February 17, 2026                    /s/ Ray Kent
                                            Ray Kent
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).